## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

|  |  |  |
|---|---|---|
| | § | |
| PENN-AMERICA INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:21-cv-211-JDK |
| | § | |
| JOEY STEVEN DOMINGUEZ, | § | |
| individually and d/b/a CROSSROADS | § | |
| MUSIC VENUE and SUSAN | § | |
| ALLEN, individually and as personal | § | |
| representative of ESTATE OF | § | |
| KEY'UNDTA BARRETT, deceased, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Joey Steven Dominguez's Motion for Summary Judgment (Docket No. 6) and Plaintiff Penn-America Insurance Company's ("Penn-America") Cross-Motion for Summary Judgment and Response (Docket No. 7). For the reasons discussed below, the Court **DENIES** Dominguez's motion (Docket No. 6) and **GRANTS** Penn-America's motion (Docket No. 7).

### I.   Background

This is an insurance coverage dispute.[1]  seeks a declaration that it owes no duty to defend or indemnify Defendants in a state-court lawsuit (the "underlying

---

[1]  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  The parties allege that

case" or "underlying suit").  In that lawsuit, Defendant Susan Allen sued Dominguez

for damages arising out of the death of Key'Undta Barrett.  Docket No. 7-1, Ex. A

at 7–8.  Allen's state-court petition alleges that Barrett was killed when a nonparty

to the present suit, Treyvon Dewayne Maddox, discharged a firearm at a music venue

owned by Dominguez.  *Id.*, Ex. A at 4–5.  For purposes of this case, the key allegation

in Allen's state-court complaint is the following:

> On or about April 20, 2019, Key'Undta Barrett ("Barrett") entered on the Premises and the said property of Defendants . . . CROSSROADS MUSIC VENUE; JOEY STEVEN DOMINGUEZ, INDIVIDUALLY and d/b/a CROSSROADS MUSIC VENUE, to attend an event sponsored, hosted and/or promoted by Defendants . . . .  During the time Barrett was on the Premises, Defendant, TREYVON DEWAYNE MADDOX ("MADDOX"), was also on the Premises.  Unknown to Barrett, Defendant, MADDOX, while on the Premises, possessed and/or obtained a firearm which he discharged, resulting in fatal injuries to Barrett. Barrett's death occurred as a direct result of the dangerous condition and/or unsafe activity described above, which, Defendants . . . JOEY STEVEN DOMINGUEZ, INDIVIDUALLY and d/b/a CROSSROADS MUSIC VENUE, knew or, in the exercise of ordinary care, should have known existed.
>
> The fatal injuries to Barrett were proximately caused by the dangerous condition and/or unsafe activity on the Premises that led to Barrett's death and by the acts and/or omissions of Defendants.

Docket No. 7-1, Ex. A at 4–5.

Upon being served with the state-court complaint, Dominguez filed a claim

with his insurer Penn-America pursuant to Policy Number PAV0162461 ("the

Policy").  Docket No. 7-2, Ex. B at 4, 23; Docket No. 6-2, Ex. 2.  The Policy's

Commercial General Liability Coverage provides that Penn-America- "will pay those

---

there is complete diversity of citizenship, and that the amount in controversy exceeds $75,000.  Docket No. 1 ¶4.

sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Docket No. 7-2, Ex. B at 23. The Policy also imposes on Penn-America- the duty to defend against suits seeking such damages. *Id.*

In a letter dated May 27, 2021, however, counsel for Penn-America informed Dominguez that the insurer would not pay for his legal defense because the petition in the underlying suit alleged a "battery," which the Policy excludes from coverage. *See* Docket No. 6-2, Ex. 2. In particular, the Policy provides that Penn-America "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." Docket No. 7-2, Ex. B at 23. And here, the Policy's Assault or Battery General Liability Exclusion excludes from coverage "liability for damages because of 'bodily injury' . . . arising out of an 'assault' [or] 'battery,'" which the Policy defines to include "any use of force against a person . . . whether or not the actual injury inflicted is intended or expected." *Id.*, Ex. B at 15. The exclusion states as follows:

> In consideration of the premium charge, it is understood and agreed that this insurance does not apply to liability for damages because of "bodily injury", "property damage", "personal and advertising injury", medical expense arising out of an "assault", "battery", or "physical altercation" that occurs in, on, near or away from an insured's premises:
>
> 1) Whether or not caused by, at the instigation of, or with the direct or indirect involvement of an insured, an insured's employees, patrons or other persons in, on, near or away from an insured's premises, or
>
> 2) Whether or not caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in a safe condition, or

3

3) Whether or not caused by or arising out of any insured's act or omission in connection with the prevention, suppression, failure to warn of the "assault", "battery" or "physical altercation", including but not limited to, negligent hiring, training and/or supervision.

4) Whether or not caused by or arising out of negligent, reckless, or wanton conduct by an insured, an insured's employees, patrons or other persons.

**DEFINITIONS:**

For purposes of this endorsement:

"Assault" means any attempt or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of such injury.

"Battery" means the intentional or reckless physical contact with or any use of force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflicted is intended or expected. The use of force includes but is not limited to the use of a weapon.

"Physical altercation" means a dispute between individuals in which one or more persons sustain bodily injury arising out of the dispute.

All other terms, conditions and definitions of the Policy otherwise apply.

Docket No. 7-2, Ex. B at 15.

Six days after issuing the denial letter, Penn-America filed this suit. Penn-America seeks a declaratory judgment that it owes no duty to defend Dominguez in the underlying action or to indemnify him for liability arising from the underlying suit. *See* Docket No. 1. Dominguez likewise filed suit. Dominguez's complaint (6:21-cv-276, Docket No. 1) seeks a declaratory judgment that Penn-America owes coverage and damages for breach of contract. The Court consolidated the two cases. Docket No. 4. On August 31, 2021, Dominguez moved for

summary judgment.  Docket No. 6.  Penn-America filed a response and a cross-motion for summary judgment.  Docket No. 7.

## II.   Legal Standard

### A.    Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A fact is material only if it will affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine only if the evidence could lead a reasonable jury to find for the nonmoving party.  *See id.*  When parties cross-move for summary judgment, the Court reviews each motion independently, "with evidence and inferences taken in the light most favorable to the nonmoving party."  *White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).  Final judgment is proper on cross-motions for summary judgment, when as here, there is basic agreement as to the material facts and legal theories are dispositive.  *Bricklayers, Masons & Plasterers Int'l Union of Am., Loc. Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).

Here, the only dispute is whether the terms of the Policy impose on Penn-America duties to defend or indemnify Dominguez in the underlying suit.

## B.    Principles of Policy Construction

The parties agree that this case is governed by Texas law.  *See* Docket No. 6 at 3; Docket No. 7 at 6; *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 89 (1938); *Texas Indus., Inc. v. Factory Mut. Ins. Co.*, 486 F.3d 844, 846 (5th Cir. 2007).  Texas courts interpret insurance policies according to ordinary rules of contract construction.  *Spec's Fam. Partners, Ltd. v. Hanover Ins. Co.*, 739 F. App'x 233, 237 (5th Cir. 2018).  "The primary goal of the court is to give effect to the intention of the parties as expressed in the policy."  *Id.*

"Unless the policy dictates otherwise, [courts] give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage."  *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).  All words and provisions should be given meaning "so that none is rendered meaningless."  *Id.*  Any ambiguity is resolved in favor of the insured.  *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).  However, "a contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning."  *Id.* (quoting *Universal C.I.T. Credit Corp. v. Daniel*, 257 S.W.2d 154, 157 (Tex. 1951)).

The Policy's Commercial General Liability Coverage implicates two duties under Texas insurance law: the duty to defend and the duty to indemnify.  Under Texas law, these duties are "distinct and separate."  *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Trinity Universal Ins. Co. v.*

*Cowan*, 945 S.W.2d 819, 821–22 (Tex. 1997)).  "The duty to defend means the insurer will defend the insured in any lawsuit that 'alleges and seeks damages for an event potentially covered by the policy.'"  *Id.* at 252–53 (quoting *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)).  "[T]he duty to indemnify means the insurer will 'pay all covered claims and judgments against an insured.'"  *Id.* at 253 (quoting *D.R. Horton–Texas, Ltd.*, 300 S.W.3d at 743).  Since each duty is separate, each duty is "evaluated under their own interpretive rules."  *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 n.1 (5th Cir. 2009).

## III.   Analysis

Dominguez seeks a declaratory judgment that Penn-America has a duty to defend him in the underlying suit and argues that the duty to indemnify claim is not ripe until the underlying suit concludes with a final judgment or settlement.  Docket No. 6 at 5–6.  Penn-America, conversely, moves for summary judgment on both claims, seeking declaratory judgment that it has neither a duty to defend nor a duty to indemnify.  Docket No. 7 at 7, 14.  The Court addresses each claim in turn.

### A.   Duty to Defend

Penn-America argues that the petition in the underlying suit squarely alleges a "battery" and thus the Assault and Battery General Liability Exclusion forecloses a duty to defend here.  The Court agrees.

Texas courts determine whether an insurer owes a duty to defend based on the "eight-corners rule," so called because courts consider only the information within the

"eight-corners-" of the insurance policy and the underlying petition for relief.[2]  *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 840 (5th Cir. 2012).  "In performing its eight-corners review, a court may not read facts into the pleadings, look outside the pleadings, or speculate as to factual scenarios that might trigger coverage or create an ambiguity."  *Gilbane Bldg. Co. v. Admiral Ins. Co.,* 664 F.3d 589, 596–97 (5th Cir. 2011).  The insurer is required to defend an underlying suit whenever the "facts alleged in the petition, taken as true, *potentially* assert a claim for coverage under the insurance policy."  *Colony Ins. Co.*, 647 F.3d at 253. However, "if the pleading only alleges facts excluded by the policy, there is no duty to defend."  *ACE Am. Ins. Co.*, 699 F.3d at 840.  Although the insured usually carries the burden to show that a claim falls within a policy's coverage, the burden shifts to the insurer when it disputes coverage on the ground of a policy exclusion.  *Trinity Universal Ins. Co.*, 592 F.3d at 691–92 (citing *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999)).

Applying that law here, the Court concludes that the underlying petition fails to assert a claim—fails even to "*potentially* assert" a claim—covered by the Policy. *Colony Ins.*, 647 F.3d at 253.  The petition alleges that Treyvon Maddox attended an

[2]  The Supreme Court of Texas recently recognized, for the first time, one exception to the eight-corners rule in *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878 (Tex. 2020).  There, the court held that in certain circumstances courts can consider "extrinsic evidence regarding collusive fraud by the insured."  610 S.W.3d at 882.  Additionally, the Fifth Circuit has long held, as an "*Erie* guess," that Texas law supports a second exception "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."  *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004).  The Supreme Court of Texas is currently considering this exception in response to a certified question from the federal court of appeals.  *See Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 846 F. App'x 248, 250 (5th Cir. 2021).  Neither party argues that an exception to the eight-corners rule applies here, nor has either party offered extrinsic evidence.

event at Dominguez's music venue and, "[u]nknown to Barrett," "possessed and/or obtained a firearm" on the premises.   Docket No. 7-1, Ex. A at 4–5.   The petition further alleges that Maddox "discharged" the firearm, which "direct[ly] result[ed]" in "Barrett's death."   *Id.*   The petition claims that Dominguez was negligent in failing to secure the premises and protect Barrett from injury and is therefore liable for damages.   *Id.*, Ex. A at 7–8.   Although the Policy covers damages "because of 'bodily injury,'" the Policy's Assault and Battery Exclusion bars coverage for damages arising out of a "battery"—"[w]hether or not caused by or arising out of an insured's failure to . . . keep an insured's premises in a safe condition."   Docket No. 7-2, Ex. B at 15. And the Policy defines "battery" broadly to mean "any use of force"—including "use of a weapon"—"against a person without his or her consent that entails some injury . . . whether or not the actual injury inflicted is intended or expected."   *Id.*   The petition in the underlying suit thus alleges a claim that is *excluded* from coverage: a claim for damages arising out of the use of a weapon against a person without his consent.

Dominguez makes three arguments in seeking coverage.   First, he asserts that the term "battery" should be interpreted consistently with its meaning in tort law, which requires a showing of intentional conduct.   Docket No. 6 at 11.[3]   But the Court must interpret the term as provided by the Policy, which excludes negligent

---

[3]   In making this argument, Dominguez claims that the entire exclusion is ambiguous.   Docket No. 6 at 11.   But a contract term is ambiguous only when it is subject to more than one valid interpretation after applying the normal rules of construction.   *See RSUI Indem. Co.*, 466 S.W.3d at 118.   Because Dominguez has not offered an alternative interpretation that gives effect to all the terms and provisions in the Policy, the Court rejects his claim of ambiguity.

conduct—and in fact, plainly states that it does not matter if the "battery" was "caused by or arising out of negligent, reckless, or wanton conduct." *See* Docket No. 7-2, Ex. B at 15; *see also RSUI Indem. Co.*, 466 S.W.3d at 118 (noting that courts apply terms according to their ordinary usage "[u]nless the policy dictates otherwise"). Second, Dominguez argues that the petition does not clearly allege that Maddox discharged the firearm as a "use of force against a person." For example, Dominguez contends, the gun could have misfired after being dropped. Docket No. 6 at 8–9. But the petition repeatedly alleges that Maddox actively "discharged" the firearm, which "direct[ly] result[ed]" in Barrett's fatal injuries. And the only way to interpret those allegations is that Maddox shot Barrett, who then died of a wound inflicted by the firearm—not that a series of events led to the gun's misfire and eventually resulted in Barrett's death. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997) (explaining that courts should not "look outside the pleadings, or imagine factual scenarios which might trigger coverage."). Third, Dominguez claims that the petition fails to allege that the use of force was nonconsensual, as required by the definition of "battery." Dominguez suggests that Barrett may have been a gun enthusiast who asked to inspect the gun before it misfired. *Docket* No. 6 at 8–9. But again, the petition states otherwise. It alleges that Maddox's possession of the firearm was "[u]nknown to Barrett"—making any form of consent impossible. *See* RESTATEMENT (SECOND) OF TORTS § 892A (AM. L. INST. 1979) (noting that consent must be "to the particular conduct, or to substantially the same conduct").

To be sure, the factual allegations in the underlying petition are minimal.  But they are clear and limited, and the Court can conceive of no way to read them to potentially state a covered claim against Dominguez.  *See ACE Am. Ins. Co.*, 699 F.3d at 840 (noting that courts may not look outside the underlying pleadings or speculate about additional facts).  Accordingly, the Court concludes that Penn-America owes no duty to defend Dominguez in the underlying suit as a matter of law.  The Court therefore **GRANTS** Penn-America's motion for summary judgment and **DENIES** Dominguez's motion on the duty to defend claim.

### B.     Duty to Indemnify

Having found that Penn-America has no present duty to defend Dominguez in the underlying suit, the Court now considers whether the duty to indemnify claim is ripe for declaratory judgment.  It is.  Generally, the duty to indemnify cannot be determined until liability is established in the underlying litigation, because "facts proven at trial may differ slightly from the allegations."  *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016); *Colony Ins. Co.*, 647 F.3d at 253.

Texas law provides one scenario, however, when the duty to indemnify can be determined before final judgment in the underlying suit.  *See Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).  Under the *Griffin* standard, declaratory judgment is proper before liability is established when (1) "the insurer has no duty to defend" and (2) "*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*"  *Griffin*, 955 S.W.2d at 84; *see also Hartford Cas. Ins. Co.*, 827 F.3d at 430; *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 669 (5th Cir. 2015).  The Fifth Circuit has

cautioned that *Griffin* is an exception to the general rule, as the underlying reasoning was predicated on there being "no set of facts that could be proved in the underlying lawsuit that could transform" the un-covered allegations into a covered incident under the policy. *Hartford Cas. Ins. Co.*, 827 F.3d at 430; *see also D.R. Horton–Texas, Ltd.*, 300 S.W.3d at 745 ("This conclusion was grounded on the impossibility that the drive-by shooting in that case could be transformed by proof of any conceivable set of facts into an auto accident covered by the insurance policy.").

The facts of *Griffin* are instructive. In *Griffin*, the underlying pleadings alleged that a bystander was injured from a gunshot fired from a passing car. *Griffin*, 955 S.W.2d at 82. In the suit for declaratory judgment, the Supreme Court of Texas held that the vehicle owner's auto insurer had no duty to defend the suit because a drive-by shooting was not an "auto accident" covered by the policy. *Id.* at 83. Further, the issue of indemnity was ripe for review because "[n]o facts [could] be developed in the underlying tort suit that [could] transform a drive-by shooting into an 'auto accident.'" *Id.* at 84.

So too here. Like *Griffin,* the factual basis and supporting legal theory in the underlying suit here are straightforward and limited—that Maddox discharged a firearm directly causing fatal injuries to Barrett. No additional facts can develop in the underlying suit to take this action out of the battery exclusion. Furthermore, Allen's allegations affirmatively foreclose facts that would potentially transform the battery into an event covered by the Policy. *Cf. Hartford Cas. Ins. Co.*, 827 F.3d at 431 (holding the issue of indemnity was not ripe for review because the allegation did "not

conclusively foreclose that facts adduced at trial" would establish coverage under the policy). For example, the state-court petition alleges that Barrett was unaware that Maddox possessed a firearm, foreclosing the possibility that the use of force was consensual. And because the underlying petition alleges that Barrett's injuries directly resulted from Maddox's use of a weapon, no other causes may be shown at trial that could co-exist with the firearm as a contributing factor to the injuries. *Cf. id.* (holding the issue of indemnity was not ripe for review because the alleged un-covered cause of injury could "co-exist" with covered causes).

Accordingly, the duty to indemnify claim is ripe for review under *Griffin*, the underlying suit falls within the Assault and Battery Exclusion, *see supra*, part III.A., and thus Penn-America has no duty to indemnify Dominguez. The Court **GRANTS** Penn-America's motion for summary judgment on its duty to indemnify claim.

## IV.  Conclusion

For the reasons stated above, the Court **GRANTS** Penn-America's cross-motion for summary judgment (Docket No. 7). Penn-America- is entitled to declaratory judgment that it owes neither a duty to defend nor a duty to indemnify Dominguez in Allen's underlying suit. For these reasons, the Court **DENIES** Dominguez's motion for summary judgment (Docket No. 6).

So **ORDERED** and **SIGNED** this **30th** day of **November, 2021.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE